Good morning. May it please the court. My name is Debra Kluck and I represent Evan Wright. He's a peace officer with the Riverside Police Department, the appellants in this matter. I've requested three hours... Three hours. Three minutes. It's been a long day. Three minutes of rebuttal and I'll be mindful of the time I see it here. I won't go over. I encourage and invite the court to interrupt me at any time to redirect me to an issue that you want me to specifically address or I have a lingering question you want me to answer. That being said, this case is about two, at the heart of it, it's about two issues. The uncontrovertible body-worn camera footage and the reaching action by Xavier Lopez for a gun. The body-worn camera... Let me stop you here. I've watched that video many, many, many times. I've paused it. I've gone really slow. I've tried to look at that as closely as possible, which by the way, the district court judge did the same. It's clear from my review of that video and his order. When Mr. Lopez has his hands up, after he followed the commands to put his hands up, two seconds according to the district court judge, and my review of that, have gone by before the officer shoots him. So the question to you is, first, is that not a constitutional violation? And two, was it clearly established? So I'll take them in the order that you presented them. The body-worn camera does not show two full Officer Wright does not dispute that if you take a screenshot of a moment in that almost six-second video from the beginning to the end of the encounter, you will see hands in this fashion. But what's important is that you cannot look at that video through the prism of a screenshot print. That's the type of isolation that Pringle, Cortez, and Arvizu has told the courts that you cannot do. But to specifically answer your question, it is what comes before that, immediately before it and immediately after. He doesn't stay this way with his hands here. You have to keep rolling tape and do it slide by slide by slide. What he does next is not raise his hand and his hands are not at his head. His hands are here facing the officer, but he doesn't stay facing the officer. What he does next is instructive. What he does is he turns his head and his body and his hands drop in the direction of the gun. The gun is right here. He's either going to, you can look at that and say that he reached, or he is going to flee. And he did that nine days earlier. Let me stop you here. Maybe there's a dispute about that, right? One view is that he was reaching. One view is that he was not reaching and he had his hands up. So the district court found that that's a question of fact that's in dispute, that therefore could deny summary judgment based upon that. The second question I think is, I think an interesting one, which is, is there a clearly established law? Can you address that? Well, because you, I'll do the second one first. Right. Okay. Thank you. The district court had to and did identify three cases that stood for the proposition that the law was clearly established. Now, keep in mind, we have a dangerous felon. And the record's clear on those dangerous propensities that occurred just in the nine days before. Xavier Lopez is facing a few steps away in a house that he had just broken into and threatened her with a gun. And behind him is his getaway vehicle that he had evaded arrest and has been convicted for evading arrest nine days earlier. And those three cases, though, let's just stick to your point. C. V. George and Hayes. C. V. granted qualified immunity. So it doesn't stand for the proposition that the law was clearly established. George and Hayes never reached the issue of qualified immunity. In George, it was not addressed at all. And in Hayes, it wasn't an issue because the Fourth Amendment, in particular, wasn't asserted in that case. In George, it wasn't addressed because the defense didn't bring it up. So the court determined it to be waived. Well, let's go back to C. V. Isn't it the case that in C. V., the court, the facts were a little different, in that the person was holding a shotgun in their hand at the time. And if I remember correctly, the court there was focusing on that particular issue. So I guess it's different, isn't it? I'm sorry. It's different, isn't it? C. V.'s very different. First of all, it was a 911 call, and the officers didn't have a dangerous felon that they knew had committed violent offenses previously and put the public at risk. Also, there were two suspects in that. One was completely compliant, and the other one had an issue. It wasn't an actual shotgun. It was a BB gun, but it looked reasonably like a shotgun. And when he reached, and that was the issue, and it's the issue here, the reach, he reached at the end of the barrel, where the trigger was at the ground. And he was still... There was no body going... C. V. seems similar to me in one respect, at least, and that is that we're talking about a very narrow frame of time in which officers are responding to a perceived threat. And in that case, we found that there were tribal questions, but that there was no clearly established law. And it also reminds me of Casella, the Supreme Court case that came down not too long ago with a woman holding a knife, where the Supreme Court found that there was no clearly established law in those few seconds, in those moments of the officer responding. And here we have a five second gap at most between... Or five or six seconds between when Officer Wright leaves the car to when the shooting occurs. So again, a very abbreviated time. Is there clearly established law in this context where it seems like Mr. Lopez may not be complying with officer orders to get his hands free until near the end of that episode, whether it's one second or two seconds? Is there clearly established law that would have let Officer Wright know that he could not use lethal force in that circumstance? Judge Sanchez, there's not only not clearly established law in the Ninth Circuit, there's not clearly established law in the entire United States of America. The facts of this matter in a brief five seconds, and really the issue is two seconds, less than the time that the light turns from green to red, and people are allowed that reaction time, and we know it's about a second and a half. So it's right in that second and a half from perceiving a threat to taking an action. And in this case, there was a potential change in events. It's not disputed. It's on the body worn camera. And then the officer would have had to perceive it and make another change. That's gonna be at a minimum of three seconds. We've got one 1,000, two 1,000, and this officer is within arm's length. You can see the officer's hand in his body worn camera with a dangerous felon. There's not a single case. But Casella, in that case, that person was, I believe, if I remember correctly, was she holding a knife, I think? And she was holding a knife, and she was not complying with the officer's commands. On two occasions, in fact, was told to put the knife down, was not. And then there was another officer that was very, very close. Are those facts different than what we have here? In that here, this particular person, Mr. Lopez, had his hands up, correct? He had his hands for a millisecond. I mean, a fraction of a second here before he goes on to his next event. But I do think that there's a material difference. I can give you seven acts of non compliance in that five seconds. And in the one 1,000, two 1,000 time frame where this highly trained officer, he's a member of the SWAT team, was within arm's length of a man that does this and then turns. Well, isn't it the case that when the officer arrived, he knew that Lopez was armed, right? With a semi automatic... He had a reasonable basis to believe it because he... Well, he had a police report from the victim who said he's carrying a semi automatic black handgun. And during the seven second tape, and I kind of agree with you, you gotta look at the totality of the circumstances, not a micro slice. But even in this seven second, which is pretty short, he pulled some black object initially, or started to pull a black object out of his coat, had it in his hand. So his hands were kind of flying around in that seven second. They do go up at the end, there's no dispute about that. But looking at that as a whole, I mean, why would that not be reasonable for an officer to fear? You don't... In our circuit, you do not have to wait, as I understand it, for a suspect to actually point a firearm at you before you can apply force, even if it's potentially deadly force. Isn't that right? Officer Wright would respectively agree with you, Judge Donato. And the court in... Recently in Richard Bernal, the city of Glendora, Judge Mendoza looked at the body worn camera in the light depicted by the videotape and found that the alleged force by the officer was not excessive. That's a legal determination. And under Scott v. Harris, you can look at it frame by frame. You can't judge the officer's conduct in hindsight, and you can never look at it in isolation. Pringle said that the panel cannot view each in isolation, rather than as a factor in the totality of circumstances. Later, Cortes, by the Supreme Court, said it requires the courts to consider the whole picture. And then in Arvizu, the whole is often greater than the sum of the parts, especially when the parts are viewed in isolation. 1, 1,000, 2, 1,000. We barely have done anything in that time frame. This officer had to respond to a gun and a... What Graham had talked about as the very tense, uncertain, rapidly evolving conditions involving death or serious bodily harm to everybody. The officer that was facing him, the officers that were approaching, the community, and the only thing between Xavier Lopez and the getaway that he had just done nine days earlier was other officers. I have the three minutes reserved. Unless you have further questions, I'll take them up on rubato. Thank you. Thank you. Thank you. Good morning to all of you. Dale Gallipo on behalf of the appellee. So I think the first important point is that in order to look at whether there was a constitutional violation or whether the law was clearly established, we have to, for today's purposes, assume all the plaintiff's facts. Well, let me ask you, your colleague raised Scott, and I have a question about that. So the district judge said, after reviewing second by second that body cam footage we've been talking about, he says, Lopez's hands were clearly empty at all times, and the tape blatantly, to use Scott's language, blatantly contradicts that. He had at one point a black object. It's in the district judge's own recounting of the video. I just don't see how he got to the punch line empty at all times after literally saying, just a couple lines ahead, he had a black object in his hands at one point. And isn't that enough under Scott for us to take a more liberal review of the record? Yes and no. First, I think it's a good point, and I noticed that as well. But the issue doesn't end there, because what's very important in a long line of cases that this court has had that are published opinions, a gun in someone's hand alone does not justify shooting someone. No, no, but let's just go back. This is the Scott point, which is, are we bound strictly taking all inferences, or does Scott give us more leeway because the video, in fact, blatantly contradicted what the district court concluded? I think it does give you some leeway, Your Honor. But I think the real important point in this case, the most important point from the plaintiff's perspective, is that Mr. Lopez was complying with the officer's commands. By pulling a black object out of his coat when the officer knew he was armed? How is that compliance? No. When the officer told him to put his hands up, that's what he did. At the end of this interaction. If counsel wants to talk about perception reaction time, it works both ways. But to Judge Donato's point, even the district court judge found that in the first four seconds in which that... It was, Xavier, get your hands up, get your hands up, out of your pockets. There's a four second span in the video, in which his hands are down here, and at one point he's reaching into his coat pocket, and appears to be pulling something out, and we later find out that there's a loaded handgun in that pocket. And then it's at the end that his hands are raised and clear, nothing in there. Correct. So I guess my point is, if we're looking at this from the standpoint of what Scott permits, he wasn't in compliance with officer commands for several seconds until the end. And my quandary with all this is, what's the clearly established law in that circumstance that would say that Officer Wright cannot use lethal force? The clearly established law. First, we all know to use deadly force, there has to be an immediate threat of death or serious bodily injury. Right. Okay? So if we have a whole string of cases that we cited, Kernow, George v. Morris, Estate of Lopez, and on down the line when a gun in someone's hand is not enough, certainly two hands visibly empty, up for two seconds after you're told by a police officer to put your hands up, quite frankly, that falls within the obvious, because that's what we want people to do. Now, whether there was a two or three second delay, Your Honor, the bottom line is, where were his hands at the time of the shots? And he was complying. All these other cases that are cited, the people are not complying at all. In fact, at the time of the shooting, they either are pointing a gun, raising a gun, or reaching for the gun at the time of the shooting. So all of the cases that we cited that affirmed denial of qualified immunity, that held there was a constitutional violation, even the one case in 2017, where they said it was a constitutional violation, but the law wasn't clearly established at that time. It was clearly established before this incident, which happened in 2021. Mr. Galipo, what about Cervantes, which where our court said just explicitly, if someone is reaching for a weapon, that... Let me find out what exactly it says, but you're familiar with that case with Cervantes. It says, if you're reaching for a weapon that clearly permits the officer to use some type of lethal force. Why does that circumstance not apply here? I think it's a great point, but let's talk about the main case the defense is relying on. Oh, sorry, Cruz. Cruz. That's okay. It was Cruz. Cruz v. City of Anaheim. Right. Now, here's what's important about that case. I think the language is, it's unquestionably reasonable for an officer to reach for a weapon. Now, two things are really important about that case, Judge Donato and Judge Sanchez. Number one, it's factually distinguishable, because they had information that he was not gonna go back to prison, he was non compliant, they told him to get on the ground, and then he reached for his waistband. But in that case, the court also said, it's a disputed issue of fact as to whether he was reaching for his waistband at the time of the shots. Therefore, we're denying qualified immunity, a jury has to decide that. Yeah, but that's no longer the law. You can have a dispute of fact and still get qualified immunity, right? Well, not if it's a material fact, Your Honor. You have to assume the plaintiff's facts, because if you're deciding if the law is clearly established or not, the question is based on what facts? If you take the plaintiff's facts... Well, if I may, I think the requirement is for you to identify what's a, quote, squarely governing case that fits the facts here. And so what is that case? I think Judge Sanchez asked that. What is that case that makes it clearly a wrong thing, clearly a bar to qualified immunity here? Well, I would submit every case we cited where a person either had a gun in their hand, but did not pose an immediate threat of death, or didn't have a gun in their hand. And the cases we cited were Cerno, George, Estate of Lopez, Villegas, Longoria, Landeros, and Hayes. Landeros, interestingly, Your Honor, which happened to be one of my cases, a person had a pocket in their hand, a hand in their pocket, and the officer suspected of gun, and they told him to take his hand out of his pocket, he took his hand out of his pocket, he shot within a second with a visibly empty hand. Here, from the plaintiff's perspective, this is a much stronger case, because having a gun on you is not enough. Even feeling threatened is not enough. There has to be an immediate threat of death, so can we really say, with someone's hands up and visible, after being told to put their hands up for two seconds, that we need a case specifically to say, if someone is told to put their hands up, and they do, and they're visibly empty, we need a case to say we can't shoot them? Well, Casella says we do, and the problem is, it's what was happening in those preceding seconds when he appears to be reaching for a loaded handgun in his pocket. Had he just immediately complied and raised his hands, I would be completely with you about this, but it's the... How can we divorce our analysis of this from what was proceeding just immediately before? Well, it's important, because it has to be at the time of the shooting. Let's take Cruz, for example. You brought that case up. Someone's reaching in their waistband. If that person was told, stop reaching or put your hands up, and they put their hands up for two seconds, and then they shot him, I would be hard pressed for someone to say, that's a constitutional shooting. You do... You have to look at everything that's going on, and you know, you're an expert in the field, I know you know this. The qualified immunity is broad. It's intended to protect, as the Supreme Court has said, all but the most plainly incompetent and those bent on this fits the situation where there is a known suspect who's armed with a semi automatic weapon, who reaches in and out during his interaction with the police, and is at best, partially compliant with an officer who has a weapon trained on him. How can you fault the officer in that context? Well, I would... Well, it's not a matter of faulting. It's a matter that it's... Well, you are. You have to fault the officer to avoid qualified immunity. Depending on how the jury finds the officer who gives a command to someone to put their hands up in a situation like this, the person puts their hands up, they're visibly empty for two seconds, and a highly trained officer shoots the person. Yes, I would fault that officer because I think it's clearly contrary to their training, to post standards, to any case. And you don't have to take a case exactly in all fours, and some cases fall within the obvious. But you could take any case where they shot a person for reaching and they stopped reaching. You're shooting a visibly unarmed person. What if hypothetically he had the gun, he took the gun out, and they said, drop it? And he dropped the gun. And they shot him after he dropped the gun. Would you be saying, show me a case that says you can't shoot someone two seconds after they drop the gun? That's how absurd, in my opinion, with all due respect to your honors, because I have a lot of respect for all of you, I think qualified immunity is getting absurd. I really do. It's application to these cases, expecting a published opinion, as if these police officers are home reading the Ninth Circuit opinions on the weekends. They're trained based on their policies and training that come from these cases. So when they're training and policies, you can only shoot someone if it's immediate threat of death. Visibly empty hands, complying with a command. I mean, is that really where we've gotten? That we have to have a case that says if someone's complying with their commands and puts their hands up for two seconds, that you can't shoot them? I mean, we're in a bad spot. If it's any comfort, the Supreme Court has expressly said qualified immunity does not require a case directly on point. That's Ashcroft v. Elkid. So points are already in the books. I get that. But the problem is, we all know that there's very rare instances where there's a published opinion, right? There's a lot of factors that go into that. Many cases aren't appealed. Many arguments are made that they're not published. And so, if we have all these cases that say there has to be an immediate threat of death, if we have all these cases that say a weapon in someone's hand is not enough, if we have all these cases that say you should give a warning when feasible and only when there are no reasonable alternatives, how can we say that someone complying by putting their hands up for two seconds is not a constitutional violation? I mean, to your point, I have seen this video many, many times as well, and I didn't count two seconds. But I think that goes to the point of what the district judge was pointing out, is that people can look at this video and draw different things from it, which suggests to me in some ways that there are triable questions, at least on the first prong. And so, here's my question. Even if you don't get qualified immunity, would the state law claims continue to go forward if there are genuine disputes of material fact in this case? Yes. So if... For negligence in Bain Act violations. If this court decides there are disputed issues of fact on the first prong of the analysis, then those claims should proceed. But I would suggest even on the second prong of the analysis, and maybe this is a case where special interrogatories might be important, because I do agree that different people can view the evidence and that video in different ways. This court in Voss and other cases had said even a video was subject to more than one reasonable interpretation. Different people could see it differently. And so, at a minimum, there should be some questions of factual findings, because I think, hopefully, you would agree, including yourself, Judge Donato, that if a jury decides that the officer perceived that his hands were visibly empty and he was not reaching for anything at the time he was shot, let's say that's a factual finding of the jury. Overqualified immunity is for the judge. I know that, but... It's not for the jury. We have to make that decision. I totally agree with you, but it has to be based on certain factual findings. So, what if the twier fact in this case said that we find that the officer saw that his hands were up, saw that they were visibly empty, and perceived that he was not reaching for a weapon at the time of the shooting? Let's say that's the facts to assume. Then, one would have to say the law was clearly established, and this falls within the obvious. And I... I just don't see this as being an obvious case at the least. As a general principle, we all understand the immediate threat that an officer has to face before using lethal force. But this is a unique one. You have someone that's initially reaching, or seems to be reaching, and then doesn't, is complying, and the duration of time between compliance and not is somewhat in question. This doesn't appear to me to be an obvious case as some of the other cases might seem. And Casella, at least, makes clear that the obvious case is a pretty rare one, when you actually reach to a legal principle to find that it's obvious. Isn't that the case? I guess different... Good minds could differ on a point. I understand what you're all saying. From our perspective... Well, not all of us. Well, they are. Go ahead. No, no, no. Go ahead. No, I'm sorry. I was just gonna say... Make your point. And I was gonna open it up for any follow up questions. You can make your point. I apologize. Maybe I'm gonna let you... I'm gonna open it up to any questions. I think that would be a smarter way for me to go. I don't have any other questions. Thank you for your presentation. Okay. So I'm just saying this, in conclusion. Number one, I feel at a minimum, there are disputed issues of factors to whether this was a constitutional violation, and therefore, at a minimum, the first prong of the analysis should be in plaintiff's favor. So as you pointed out, Judge, that then at least the state claims could proceed. And secondly, I strongly still feel, even though I know I'm getting some pushback from your honors, that the law was clearly established at the time, that shooting a visibly unarmed man who's complying with the officer's command to put his hands up was a constitutional violation. Thank you. Thank you. I'm assuming there's no other questions? No other questions. Thank you. Okay, thank you. I can't let the constitutional violation go. Nowhere in the record does Javier Lopez say that he never reached. He didn't reach once. He didn't reach twice. He reached three times. If you're going to stop and look at that one frame still, look at all the frames from the beginning to the end. His hands came out of these pockets, and then there was nothing in his hands. And he goes to the lapel, pulled it out, reached. That was when the officer had the constitutional right, legal right, to respond with deadly force. But the officer exercises extraordinary restraint. He puts his hand in there. Watch where Xavier Lopez puts the arm in to grab something. Still doesn't shoot. Pulls the gun, and at this point, you can see Officer Wright's hands out. It looks like he touched him, was about ready to grab him. Keep frame by frame. Xavier Lopez puts up his arm to stop the officer. The officer went back and shot twice in the head. This is provable, factually from the video. He goes like this, not this, not this. This was not one, one thousand, two thousand. That was not in the video. It's blatantly contradicted by the video. He goes like this, turns his head, and his hands don't go up. They go here. The weapon is here. I don't know why we're getting around this. There was a gun. There was a gun. Everybody knows it was a gun. The officer knew it was a gun. The minute that he shot, he said, there's a gun, not to warn Xavier Lopez. It was to warn the fellow officers that were approaching, and they kept him under legal cover. They didn't empty their magazines. They reassessed. They were still at danger. His hands... Well, counsel, what amount of time would it be prudent for an officer to wait then before, when it would be inappropriate? Well, they need at least a second and a half to perceive and respond, but there has to be some sort of at least a moment to analyze. There's a new piece of information, and that information was this and this. I'm not gonna speculate what the officer would have done if he had enough time to take that information in. I'm just begging the court... Well, would it be three seconds? I beg your pardon? Would it be three seconds? No. In fact, my very skilled opposing counsel had that come up this month, where there was a body worn camera, and it was obstructed for three seconds, and he argued in three seconds, didn't have a gun, it had a baton, that the same arguments that he's making here in this court, the Ninth Circuit said, no, it was qualified. I mean, there were factual issues because the video was obstructed. We don't have that here. And I'd like to end... Do your view that the turning to the left, that rotation doesn't make this... Or rather, it's reasonable because of the turning away or because he's not raising his hands enough? I'm not sure I'm following your argument. Certainly. We sit here when we treat as a fact that this was happening. He was standing still. The command was what? Don't move. Don't move, don't move, don't move. Officer Wright said it, and his colleagues said it. They were approaching him. Don't move. What does he do? He moves, and his hands drop. The gun had not gone off yet. When the gun goes off, his hands then drop further. Now, the shooting would have a play into some of that. But that's in light of the prior non compliance too. I mean, it's... That's correct. Yeah. I started out with the body worn camera opens the door to jurisdiction. And I wanted to finish to say, the reach, the three reaches closes the door of liability. In Riverside County, in the last 12 months, we've lost four officers. One of them was execution style. When a gun is pointing at an officer, the body worn only captures that. That officer did not survive. That's a very real situation, the facts on the ground for these highly skilled officers. One 1,000, two 1,000. You're asking them to have no human reaction time. The body worn camera couldn't be clearer. And Officer Evan Wright, in light of the fact that Xavier Lopez never once says he didn't reach, let alone three times. He never once said he was compliant. What they talk about is his intimacy with the gun. He didn't have it completely in his hands. It's irrelevant. And this court has rightfully said, cruises the controlling case. And your retired honorable colleague, Judge Kaczynski said, specifically in there, I cited in my brief, if the jury is to find any reach, it's not the qualified immunity argument that stops. It's the constitutional inquiry. The officer had the legal authority to respond with deadly force. The stakes could not be higher. The consequences could not be dire. This court says to these officers, these fine men and women that are dealing with the facts on the ground that are dangerous, that when a dangerous known felon with a potential hostage situation in the front of him and a getaway car in the back, both of which with nine days earlier, he approached terrorizing one and almost putting the community and officer's life at risk in the getaway. That officer is not authorized to use force. That's not this law. Thank you. Thank you. Thank you both for your helpful arguments. The matter will stand submitted. Court is adjourned. All rise. This court for this session stands adjourned.
judges: SANCHEZ, MENDOZA, Donato